```
 1                IN THE UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2
                           MIAMI DIVISION
 3
                   CASE NO.:  20-cv-24782-CMA
 4

 5

 6
     XL FUNDING, INC.,              )
 7                                  )
                   Plaintiff,       )        February 4, 2021
 8   v.                             )
                                    )
 9   JOHN J. GRIGGS, III, et al.,   )
                                    )        Pages 1 - 35
10                 Defendants.      )
     _____/
11

12

13

14
                         DISCOVERY HEARING
15
                           (Via Zoom)
16
             BEFORE THE HONORABLE EDWIN G. TORRES
17              UNITED STATES MAGISTRATE JUDGE

18

19

20   APPEARANCES:

21
     On behalf of the Plaintiff:
22
             WALDMAN BARNETT, P.L.
23           3250 Mary Street
             Suite 102,
24           Coconut Grove, FL 33133
             BY:  MICHAEL SAYRE, ESQ.
25
```

```
 1   APPEARANCES CONTINUED:

 2
     On behalf of the Defendants:
 3
                 HOGAN LOVELLS US LLP
 4               600 Brickell Avenue
                 Suite 2700,
 5               Miami, FL 33131
                 BY:  DANIEL E. GONZALEZ, ESQ.
 6

 7
                 REYNOLDS FRIZZELL LLP
 8               1100 Louisiana,
                 Suite 3500
 9               Houston, TX 77002.
                 BY:  MICHAEL K. OLDHAM, ESQ.
10               BY:  HARRIS Y. WELLS, ESQ.

11

12

13
     Transcribed By:
14
                 BONNIE JOY LEWIS, R.P.R.
15               7001 SW 13 Street
                 Pembroke Pines, FL  33023
16               954-985-8875
                 caselawrptg@gmail.com
17

18

19

20

21

22

23

24

25
```

1              (Thereupon, the following proceeding was held:)

2              THE COURTROOM DEPUTY:  The United States District

3    Court for the Southern District of Florida is now in session.

4    The Honorable Edwin G. Torres presiding.

5              Calling case XL Funding Incorporated versus John J.

6    Griggs III, et al.; Case Number 20-cv-24782-Altonaga.

7              Counsel, please state your appearances for the record

8    starting with the Plaintiff.

9              MR. SAYRE:  Thank you.

10             This is Michael Sayre of the law firm of Waldman

11   Barnett representing XL Funding, Inc.

12             MR. GONZALEZ:  Good afternoon.

13             This is Dan Gonzalez from Hogan Lovells representing

14   the Defendants.

15             MR. OLDHAM:  Good afternoon.

16             Also, Mike Oldham with the law firm of Reynolds

17   Frizzell representing the Defendants.  And I believe Harris

18   Wells, also of Reynolds Frizzell, is on the line as well.

19             THE COURT:  Anybody else?  No?

20             Good afternoon, everybody.  This is a discovery

21   hearing that I believe was requested by the Plaintiff.  This

22   hearing is being held by telephone this afternoon under the

23   circumstances.  Don't forgot, don't speak over each other.  I

24   will give everybody plenty of time.

25             Let me turn, then, am I right, counsel for the

 1   Plaintiff, Mr. Sayre, you set the hearing?

 2        MR. SAYRE:  I did, Your Honor.

 3        And although I will say that I think that our issue

 4   was largely resolved and I would be happy to speak to that

 5   whenever Your Honor is ready.

 6        THE COURT:  Okay.  I did see that you all had worked

 7   out an agreement on a bunch of things, but there are other

 8   things that are still in dispute; is that right?

 9        MR. SAYRE:  That is correct.

10        Still some things in dispute as I understand it.  And

11   I don't think there is a dispute on this, but I'm sure opposing

12   counsel would tell me if I'm wrong.  There is one Rule 30(b)(6)

13   topic that there's a dispute over and it's a 30(b)(6) topic

14   that was sent by Defense counsel and that's the one issue.  The

15   other issue is the deposition of Michael Fischer, who is one of

16   the principals of Plaintiff.

17        I think that those are the two issues that are still

18   teed up for Your Honor.

19        THE COURT:  Okay.  And what is the -- well, let's talk

20   about the one that we can dispose of quickly first, which is

21   the depo designation issue.  So this has to do with the

22   Defendants' designation or the Plaintiff's designation?

23        MR. SAYRE:  It has to do with the Defendants' topic

24   for a Plaintiff corporate rep.  And the topic is -- and it is

25   included in the proposed order that we sent to Your Honor on

1   Monday.  The topic is and I will quote:

2          "Identification of project catalyst in the time,

3   manner, and amount of Plaintiff's investment in it."

4          And that's a quote and our objection, which I will

5   also quote is:

6          "Objection.  This is unrelated to jurisdiction.  If

7   you want to know where as to the identification of project and

8   decision to invest that is fine, but otherwise this topic is

9   improper."

10          And so our issue, Your Honor, with this one is the

11   Court has not allowed merits discovery.  The Court has issued

12   an order, which we cited in our proposed order, allowing

13   personal jurisdiction discovery.

14          After at our meet and confer with opposing counsel,

15   they said that this topic is aimed at subject matter

16   jurisdiction and, therefore, is proper.  And we take the

17   position that, well, the Court's order was limited to personal

18   jurisdiction and that's kind of the dispute as we see it in a

19   nutshell.

20          THE COURT:  All right.  Well, let me turn to Mr.

21   Gonzalez.  Is there a subject matter jurisdiction issue?  I

22   thought that this was a personal jurisdiction issue.

23          MR. OLDHAM:  Your Honor, this is Mike Oldham.  If I

24   may handle that one?

25          THE COURT:  Sure.

1          MR. OLDHAM:  We have advised Judge Altonaga -- and

2     there was a hearing on this -- when a Defendant has actually

3     filed or notified the Plaintiff that they intended to take

4     discovery, they filed a motion for confirmation that only the

5     Plaintiff could seek discovery.

6          We filed in opposition on December 28th, which we

7     provided to you and then we had a hearing on it.  And during

8     that hearing with Judge Altonaga, we informed the Judge that we

9     intend to challenge first personal jurisdiction in Florida

10    because both of these Defendants, who are individuals who live

11    and work in Texas and project catalyst, we believe, the budget

12    catalyst they are suing about is a real estate project in

13    Austin, Texas.

14         And we also intend to challenge subject matter

15    jurisdiction because if we know the right project they are

16    suing about, if it's the project in Austin, Texas, the

17    Plaintiff didn't invest in it at all.

18         And the only claim that they have asserted is one

19    under the Florida RICO Act for fraudulent inducement of an

20    investment in project catalyst.  So if they didn't invest in

21    it, they have no standing and there is no subject matter

22    jurisdiction.

23         Third, we informed Judge Altonaga that if any part of

24    the case remains, we intend to file a motion to compel

25    arbitration because the entity that did invest, a different

1  nonparty called XL Catalyst LLC is party to a binding

2  arbitration agreement as part of the operational documents for

3  a limited liability company in which they invested.

4       So really this is a narrow topic, but we want to

5  confirm that we have the right project that we're talking about

6  because they are alleging specific jurisdiction based on

7  context that they say happened in Florida to induce them to

8  invest in this project.

9       So we want to identify the project and find out what

10  did they invest in and from where because we think the answer

11  to that is nothing.  So it really goes to both types of

12  jurisdiction.

13       THE COURT:  Well, at this point you all filed this

14  joint scheduling report, right, back in December and she said,

15  Judge Altonaga set it for trial for November 22nd.  So,

16  actually, and then she entered an order staying discovery on

17  December 7th, right?

18       MR. SAYRE:  Correct.

19       MR. OLDHAM:  That's correct.

20       MR. GONZALEZ:  That's correct.

21       Expecting jurisdictional discovery.  And we've made

22  clear, Your Honor, to Judge Altonaga that we intend at the

23  appropriate time to file.

24       When we file motions to dismiss, they are going to be

25  on the basis of both personal jurisdiction and subject matter

1    jurisdiction with regards to this issue of compelling

2    arbitration to where we think this case actually belongs.  So

3    that has been clear since the beginning of this case.

4            MR. SAYRE:  Correct.  And so --

5            THE COURT:  How about that, Mr. Sayre?

6            As I'm looking through doesn't Judge Altonaga's order

7    of December 7th kind of negate or dissolve the dispute?

8            MR. SAYRE:  So this is Michael Sayre on behalf of

9    Plaintiff, Your Honor.

10           In regards to resolving the dispute, the order of

11   December 7th, as I recall, that is the one that stays

12   discovery.  And then, but just so it's clear for Your Honor

13   because this was kind of a -- I don't want to say complicated,

14   but this was a multistep process.

15           So Judge Altonaga stayed discovery, but then she said,

16   however, to the extent that personal jurisdiction is going to

17   be challenged, the other side has to notify -- when I say the

18   other side I'm talking about Defendants -- have to notify the

19   Court that they intend to challenge jurisdiction, which

20   Defendants' counsel did.

21           And then, under Judge Altonaga's order, in the event

22   that Defendants do intend to challenge personal jurisdiction,

23   then me, Plaintiff, was supposed to notify the Court whether

24   they intended to then engage in personal jurisdictional

25   discovery related to that, which we did.

1   And then, the Judge entered an order at Docket Entry
2   16 in which she said, okay, I'm going to allow personal
3   jurisdiction discovery.  And that's what we cited to in our
4   proposed order and that's where it lays.  And the Judge is not
5   allowing merits discovery, but is allowing personal
6   jurisdiction discovery.
7   THE COURT:  This is actually what she said:
8   "If Defendants confirm they intend to either challenge
9   personal jurisdiction or move to compel arbitration, discovery
10  is stayed pending resolution of the forthcoming motion to
11  dismiss and/or compel arbitration."
12  So doesn't that make clear that she did not limit it
13  only to one type of jurisdiction, but anything that relates to
14  either of those topics?
15  MR. SAYRE:  If that's Your Honor's ruling, the way I
16  read it because she does, in that order, talk about discovery
17  related to personal jurisdiction.
18  THE COURT:  That is Paragraph 2.  I read to you
19  Paragraph 3.
20  MR. SAYRE:  Let me pull it up, Your Honor, just so
21  we're all on the same page.
22  THE COURT:  The key paragraph is Paragraph 3:
23  "Discovery is stayed pending Defendants' confirmation
24  that they intend to challenge personal jurisdiction and/or move
25  to compel arbitration.  If Defendants confirm their intent to

1  either challenge jurisdiction or to compel arbitration,

2  discovery is stayed pending resolution of the forthcoming

3  motion to dismiss and/or compel arbitration."

4          I see why you are saying that, well, she only referred

5  to this jurisdictional discovery in the context of Paragraph 2,

6  but I think you have to look at the order as a whole, don't

7  you?

8          MR. SAYRE:  If that's Your Honor's ruling, that is

9  completely fine.

10         THE COURT:  Okay.

11         MR. SAYRE:  But I don't think -- but my understanding

12 and Mr. Oldham can correct me if I'm wrong, is when we had our

13 good faith conferral, it was not limited to standing because

14 we're going to move to compel arbitration.  His argument was

15 you're just not the right Plaintiff.

16         And so that's where I think he's going with this

17 topic.  If I misunderstood his position, then I will let Mr.

18 Oldham correct me.  So it is not just a compelling arbitration

19 issue.  It is you've got the wrong Plaintiff.

20         THE COURT:  Aren't they related because the Plaintiff

21 who filed the lawsuit is not the one who actually signed the

22 agreement.  Isn't that the problem?

23         MR. SAYRE:  Well, the Plaintiff had filed a lawsuit --

24 actually if the agreement -- and maybe we're getting a little

25 further than we need to.  The agreement lists XL, I believe, a

```
 1   LLC and then XL Funding Inc., is I believe the president or
 2   sole member of that LLC and they are both listed on the
 3   agreement.
 4           THE COURT:  Oh, okay.  So, then, do you have any
 5   challenge, then, to arbitration?  I don't get it.
 6           MR. SAYRE:  Oh, we do have a challenge because guess
 7   who is not a party to that agreement?
 8           THE COURT:  Who?
 9           MR. SAYRE:  John Griggs or cross Moceri, the
10   Defendants in this case.
11           THE COURT:  Oh, I see.  So there's an issue as to who
12   the proper Plaintiff is and their relationship to the
13   Defendants.  I guess that's the problem.
14           MR. SAYRE:  And again, as I understood the position
15   that Mr. Oldham took during our meet and confer was, it was not
16   to compel arbitration.
17           And I understand what Your Honor is saying that maybe
18   the two are related, but it was not a compel arbitration issue.
19   It was, hey, this Plaintiff cannot bring this lawsuit.  It's
20   not this Plaintiff cannot bring this lawsuit because it should
21   be an arbitration.  It was this Plaintiff cannot bring this
22   lawsuit.
23           THE COURT:  All right.  Let me turn back to counsel
24   for the Defendant.  Tell me how the discovery that is at issue
25   relates to either of these two prongs of her order.
```

1        MR. OLDHAM:  Your Honor, you stated it correctly.

2        The LLC agreement is between, it involves XL Catalyst

3   LLC.  It does not include XL Funding, Inc. as a member.  XL

4   Funding Inc.'s president signed as the manager of XL Catalyst,

5   but to avoid the arbitration clause, they just filed on behalf

6   of a parent entity thinking that would get them around it.  And

7   they sued individuals on the other side, the managers of the

8   entity that they invested in, thinking that would get around

9   it.

10       Neither of them get around an arbitration clause, but

11  by filing the lawsuit on behalf of the wrong Plaintiff, one

12  that made no investment, they have no standing.  So step one is

13  subject matter jurisdiction because if they substitute the

14  correct Plaintiff or, as I guess Mr. Sayre said today, even if

15  it stayed XL Funding, either way they appear to be bound by a

16  binding arbitration clause that also covers claims against the

17  managers.

18       THE COURT:  Okay.  All right.  Well, I understand why

19  the Plaintiff took the position that Plaintiff took.  So I have

20  no quarrel with that.  My reading of the order is that she is

21  staying discovery other than the topic that directly relate to

22  those two things.

23       So does that answer, then, your first dispute in light

24  of that ruling, Mr. Sayre?

25       MR. SAYRE:  If Your Honor is ruling that they get to

 1  talk about -- that I got to produce somebody on that topic,

 2  then it does.  I mean --

 3          THE COURT:  Well, the person to produce for the topic

 4  that you agreed to, would that be a different person?

 5          MR. SAYRE:  No, no.  Listen, it's going to be one guy.

 6          THE COURT:  Okay.  So there's no problem there.

 7          What is the next issue, then?

 8          MR. SAYRE:  The next issue is whether they get -- it

 9  sounds like they are going to want to know where the money came

10  from and all that kind of stuff and I object on that.  It was

11  personal jurisdiction as we saw it.  Now if Your Honor

12  disagrees, then that's fine.

13          THE COURT:  Let's talk about general jurisdiction for

14  one second.  Are you claiming that jurisdiction exists here on

15  the basis of general jurisdiction only?

16          MR. SAYRE:  So the answer is that has been a heated

17  topic.  And the answer is, no, we do not base it only on

18  general jurisdiction.

19          THE COURT:  Right.

20          MR. SAYRE:  We believe that there is specific

21  jurisdiction as well as general jurisdiction.  Now I know that

22  I will tell you the other side, of course, disagrees with

23  general jurisdiction.

24          I have read the case law on how general jurisdiction

25  has been refined, but we do believe strongly that there is

```
 1   specific jurisdiction.  And I won't go into the details on
 2   that, but our guys are based out of Miami.  These guys from
 3   Texas, the Defendants, came to Miami and sold our guys on the
 4   project in Miami-Dade.  They have done multiple other projects
 5   with our guys in Miami.  They know they are in Miami and so we
 6   believe there is specific jurisdiction.
 7           THE COURT:  Well, the problem with that is that
 8   specific jurisdiction relates to an analysis of the context
 9   with the cause of action.
10           So there is always going to be some overlap between
11   some of the issues of the claim that relate to issues of
12   specific jurisdiction.  So it is very hard to police in advance
13   especially, which I don't do, which question is in and which
14   question is out.
15           MR. SAYRE:  That's fair enough, Your Honor.
16           And if Your Honor wants to leave this topic open that,
17   you know, it's something that they can delve into.  But with
18   the understanding that to the extent that we feel that they've
19   gone too far afield, we have the right to contact chambers
20   during the deposition to make that argument.
21           THE COURT:  No.  No, that's not how it works.
22           So the issue, if you want to do jurisdiction
23   limitations on jurisdictional discovery, typically I do that
24   based on the number of witnesses and the scope of the time of
25   the deposition.
```

1          So, for example, how many parties were you deposing

2    for purposes of your arguments on the jurisdictional issues?

3          MR. SAYRE:  I'm just deposing the Defendants.

4          THE COURT:  Okay.  The two individuals Defendants?

5          MR. SAYRE:  The two individual Defendants.  I'm sorry.

6          THE COURT:  And how many were the Defendants seeking

7    to depose for purposes of these two issues?

8          MR. SAYRE:  It depends on what --

9          MR. OLDHAM:  Your Honor, the corporate representative

10   deposition, plus Michael Fischer, which is an issue that we'll

11   take up with you next.

12         THE COURT:  I think you broke up a bit.  You said the

13   corporate rep, plus who?

14         MR. OLDHAM:  Plus Michael Fischer.

15         THE COURT:  And no further people, right?

16         MR. OLDHAM:  No further people.

17         THE COURT:  Okay.  So the parties have already worked

18   out basically a limitation on the number of people we are

19   talking about.  So we are only talking two depositions each.  I

20   will hold both of you to that.

21         So now, in light of that, feel free to put any

22   objection on the record.  But the rule in our district is

23   pretty clear and that's the one that I enclose in my standard

24   order, I don't know if you've reviewed that, but you can

25   preserve any argument you want.

1        But if the witness knows an answer to a question that

2   is given, the witness has to answer.  If the witness doesn't

3   know, then he can say so.  But, obviously, the witness needs to

4   be prepared to answer on anything that he should know having to

5   do with the jurisdictional issues that we are dealing with.

6        So it is obviously a very broad topic.  So feel free

7   to put any objection on the record if you want to strike any

8   testimony, but if the witness knows an answer, the witness has

9   to answer.  That's the way we work.

10        And then, after the deposition, if you want to strike

11   testimony or, you know, preclude use of something, feel free to

12   raise it after the deposition, but there won't be any policing

13   of the deposition.  The limitation for jurisdictional discovery

14   is typically volume.

15        So you have already agreed to two for each side and

16   that is perfectly reasonable and so that is the most efficient

17   way to handle it and there is too much of an overlap anyway.

18   There is too much of an overlap on the question of subject

19   matter and personal jurisdictional to the causes of action.  So

20   there's no policing of that.

21        Understood?

22        MR. SAYRE:  Understood, Your Honor.  Thank you.

23        THE COURT:  Okay.  Now, let's get to the second

24   question which is -- well, you tell me what the second issue is

25   from the Plaintiff's perspective.

1      MR. SAYRE:  Okay.

2      MR. GONZALEZ:  Your Honor, the second question really

3  is from the Defendants' perspective.

4      THE COURT:  Oh, sorry.  From the Defendants'

5  perspective.  Let me go to the Defendants, then.

6      MR. OLDHAM:  Your Honor, before we move onto the

7  second one, just to complete the first on the corporate

8  representative deposition -- and this is really just a point of

9  clarification.

10      In their proposed order Plaintiff stated, I think

11  incorrectly, that we had agreed to impose a limitation on a

12  different topic; topic 1(d), which is you are asking for a

13  corporate representative who can testify regarding the location

14  of each of these communications they claim, you know, gives

15  rise to specific jurisdiction.

16      The Plaintiff did not object, but they asked for an

17  understanding that the person they have designated, Dan McKenna

18  who did not join XL Funding until years later after the alleged

19  contacts that he will be there to testify about, they said he

20  won't be able to identify every communication because they say

21  there is just too many.

22      When we conferred, I think Mr. Sayre acknowledged that

23  that was a comment and not an objection.  We did not agree to

24  impose any limitation on that.  If they alleged that there is a

25  contact in Florida that gives rise to jurisdiction, we intend

1    to question the witness about it.  And we expect them to

2    testify about information known or reasonably available to the

3    organization and they should conduct a good faith investigation

4    before they arrive.

5         And so we did not agree to impose a limitation on that

6    topic.

7         THE COURT:  Okay.  I didn't hear that topic being

8    raised by the Plaintiffs.  So if you didn't agree to it and

9    there is no dispute about it, then, you don't need to involve

10   me, right?

11        MR. SAYRE:  No.  And from Plaintiff's perspective,

12   absolutely not, but the other side, they have already produced

13   1,000 pages of documents.  If they want a recantation as to

14   every one of those documents, it may not happen, Your Honor.

15        THE COURT:  Right.

16        MR. SAYRE:  So you are absolutely right.

17        I will not dispute what Mr. Oldham said.  It was not

18   an objection.  It was more of a comment to the corporate topic.

19        THE COURT:  Got you.

20        Okay.  What is the second issue from the Defendants'

21   perspective?

22        MR. GONZALEZ:  So, Your Honor, the second issue, you

23   already heard the name Michael Fischer being mentioned and he

24   really is at the heart of this claim.

25        The allegation from the Plaintiff is that the

1  Defendants' cross Moceri and John Griggs on unspecified dates

2  and unspecified times communicated and contacted -- and you

3  heard Mr. Sayre refer to our guy in Miami.  Well, our guy in

4  Miami, as far as we understand, is Michael Fischer because they

5  have put him as the ultimate beneficial owner of XL Funding in

6  Miami.

7          And notwithstanding that, they have completely refused

8  to make Mr. Fischer available to us.  They have said that he is

9  simply not available to deposition.  We have asked them

10 specifically as to the reasons why that would be.  What is his

11 physical issue of unavailability?

12         They have refused to provide any medical reasons, or

13 documentation, or any other proof of unavailability.  They have

14 rebuffed our offers to make any reasonable accommodations.

15         We basically all know that we are living in a virtual

16 world now and this would be a virtual deposition, in any event.

17 We are happy to sort of accommodate times that would be better

18 for Mr. Fischer.

19         They have simply said, though, that he is just not at

20 liberty to share Michael Fisher's private medical information .

21 And instead, they say they wish to unilaterally provide the

22 Court with documents that support *in camera* the reasons why

23 they are just not making him available.

24         That is just not appropriate in this district.  Under

25 the Federal Rules of Procedure 26(c) the Court can issue a

1 protective order, but not in this fashion.  This is not the way

2 it works.  First of all, they have not even filed a protective

3 order with regards to Mr. Fischer.  They have just simply said

4 he is not available.

5        Just a month ago the Southern District in the case of

6 *Wolf v. College of Holy Cross,* which we provided to the Court

7 yesterday and to opposing counsel, said quite clearly that:

8        "The moving party must show extraordinary

9 circumstances and injury with specificity.  The moving party

10 must specifically demonstrate facts in support of the requests,

11 as opposed to conclusory or speculative statements about the

12 need for a protective order and the harm that will result

13 without one."

14        Again, a protective order has not even been filed

15 here.  We have been given no details whatsoever.  In fact, the

16 Court in *Wolf* went on to say that --

17        THE COURT:  Let me stop you real quickly.  Did you

18 subpoena this guy?

19        MR. GONZALEZ:  We did not get that far, Your Honor,

20 because Mr. Fischer is completely in control of the Plaintiff

21 and they simply have said already -- they didn't say you need

22 to go and subpoena him.  We don't control of him.  They said we

23 are not making him available.

24        So we certainly would but, you know, frankly, under

25 the circumstances, we thought we could have worked through

1  that, but they simply have said he is not going to be made

2  available.  So we can go ahead and track him down and serve him

3  a subpoena if we have to, but they have literally said we are

4  not going to make him available.

5          And they said bring the issue up to Judge Torres

6  during the hearing today and that's what we are doing at this

7  time.

8          THE COURT:  Well, is he a corporate officer and an

9  employee?

10         MR. GONZALEZ:  Well, that's just it.

11         What they have said is he is the ultimate investor.

12 He is the ultimate beneficiary of this whole investment of

13 XL Funding, Inc.  That's what they have told us.  We don't know

14 anything further.  That's why we need to depose him.

15         THE COURT:  Okay.

16         MR. OLDHAM:  Let me ask you a question.  They have

17 represented that he is the principal of the company as well?

18         MR. GONZALEZ:  Yeah, that's right.

19         I'm sorry if I didn't say that.  That's how they have

20 represented him to us, but they have otherwise not given us any

21 reason whatsoever as to why they are not making him available.

22         THE COURT:  Okay.  Counsel for the Plaintiff, is he

23 the officer or director of the company?

24         MR. SAYRE:  He is the principal of the company, Your

25 Honor.  It's an LLC.  So I don't know about officer or

1  director, but he is a principal of the company.

2          THE COURT:  I got it.  I got you.

3          MR. SAYRE:  And I didn't want to cut anybody off, but

4  if I can tell you the situation, then.  Your Honor, Mr. Fischer

5  is not in great medical condition.  Let's just put it that way.

6          Now we were not at liberty to disclose the nature of

7  his ailment and that is why we are not able to give Defense

8  counsel any substantive information.  We had hoped we would

9  receive a -- some sort of record by today to provide to Your

10 Honor *in camera* so Your Honor understood the medical condition,

11 but we have not received that yet.

12         And without waiving any privilege, we have advised the

13 client given that and given that we are officers with the court

14 and must be forthright with the Court, we have advised him that

15 we will be disclosing Mr. Fischer's condition and that is that

16 Mr. Fischer is in a coma.

17         Okay.  So Mr. Fischer cannot be deposed because he

18 would be unable to answer it because he wouldn't hear the

19 question.  So with that being said, that is just me as an

20 officer of the court advising you that that is the situation

21 and I understand that there are no documents in support of

22 that.

23         Now what we would be okay with and maybe this would

24 prompt the client along to get a document is if Your Honor

25 entered an order to the effect that, listen, unless some sort

1  of document supporting the assertion made by counsel at the

2  hearing today is provided within ex-number of days then, you

3  know, I see no reason why I cannot force Mr. Fischer to sit for

4  deposition.

5          But, again, that is the situation and I sound like we

6  were trying to hide the ball.  It is just that we were not at

7  liberty to disclose and we were not given permission to

8  disclose.

9          THE COURT:  So you say you are trying to get the

10 client to get you documentation.  You don't literally mean

11 Mr. Fischer.  You mean somebody else who knows --

12         MR. SAYRE:  Somebody else.  Yeah, we are not having

13 any conversation with Mr. Fischer.

14         THE COURT:  Got you.  Okay.  Then, well, why don't we

15 do it that way, then?

16         MR. GONZALEZ:  Your Honor --

17         THE COURT:  The Defendant is entitled to verification

18 of a medical condition, but how long is he expected to be in a

19 coma?

20         MR. SAYRE:  He has been in a coma for two weeks, Your

21 Honor.  So I don't know the answer as to how long.

22         THE COURT:  Okay.  And then, do we have any time

23 limitation, by the way, that Judge Altonaga gave us other than

24 the trial date, of course, but do we have any -- at the hearing

25 did she indicate to you all that she wanted anything done by a

1  certain date?

2      MR. SAYRE:  I have to amend my complaint of --

3      MR. GONZALEZ:  That is one of the -- sorry.  If I may,

4  Your Honor?

5      THE COURT:  Let me ask Mr. Sayre first.  Mr. Sayre,

6  from your perspective?

7      MR. SAYRE:  Yes.  So the answer is jurisdictional

8  discovery has a cutoff deadline of, I believe, it was the 15th.

9      After which, I have to amend my complaint by a date

10  certain of the 20th, or something like that, to add any

11  additional personal jurisdictional allegations that I want to

12  include.

13      THE COURT:  Oh, okay.  So this is in February.

14      MR. GONZALEZ:  That's not correct.  That's not

15  correct, Your Honor.

16      THE COURT:  Wait.  Hold on a second.

17      MR. SAYRE:  I don't want to misspeak and I'll pull up

18  the order right now, Dan or Mike Oldham, because again I want

19  us all to be on the same page.

20      MR. GONZALEZ:  Your Honor, the order --

21      THE COURT:  Hold on.

22      Mr. Sayre, when you say the 20th, your amended

23  complaint is due the 20th; the 20th of February?

24      MR. SAYRE:  Yes, it's all in February, Your Honor.

25      THE COURT:  Okay.

1        MR. OLDHAM:  I believe it's Document 19, Your Honor.

2        MR. SAYRE:  But that was amended.  Remember, that one

3  was amended, Mike.

4        MR. OLDHAM:  Oh, am I on the wrong one?  Sorry.

5  Document 36.

6        MR. SAYRE:  Notice for (inaudible).  Let's pull it up.

7        MR. GONZALEZ:  Isn't her order the 12th of January?

8        MR. OLDHAM:  It's orders number 36 and number 30.  The

9  36 refers back to 30 for parts of the deadline.

10       THE COURT:  Got you.

11       MR. OLDHAM:  And the 14th is jurisdictional.

12       MR. SAYRE:  The deadline is the 14th of February.

13       Yeah, 14th.  I said the 15th, but it's the 14th.  The

14  14th is a Sunday, Your Honor, and that's why I said the 15th.

15       THE COURT:  Got you.

16       All right.  Well, I guess let me turn to counsel for

17  the Defendant.  What would your -- just taking at face value

18  the individual is in a coma and subject to verification, what

19  do we do now?

20       MR. GONZALEZ:  Well, Your Honor, first of all, I do

21  have to, for the record, I need to say that, you know, we had

22  several meet and confers with Mr. Sayre on this very issue

23  because it is such an important issue.  And not once did he

24  disclose anything of what he is telling the Court for the first

25  time here.  So this issue about a coma we are hearing for the

1  first time today.

2       We all know -- and I don't think Mr. Sayre, if he

3  practices before this Court, he knows the law and he should

4  know the law in this court.  He does not need Your Honor to

5  issue an order saying that they must give written

6  documentation.

7       Every District Court case that I have submitted

8  yesterday and every other case that we have found on this issue

9  made clear that he had the obligation to provide such written

10 documentation and it can't be just conclusory.  It can't be --

11      THE COURT:  But, Mr. Gonzalez, say he violated that

12 and I compel it.  What good does it do you if, in fact, the guy

13 is in a coma?

14      MR. GONZALEZ:  Well, I agree, Your Honor.

15      And like I said, this is news to us today.  And I feel

16 very bad for Mr. Fischer if this, in fact, is the case, but

17 what I am concerned about is, this is the first hearing before

18 Your Honor.

19      It is not the first hearing we have had with Mr.

20 Sayre, though.  And this happens over and over again with

21 Mr. Sayre who waits until the Judge forces him to do what he

22 otherwise knows he should have done.

23      And what I'm saying is and what we are anticipating is

24 that we do have a very strict deadline coming up that we have

25 to then deal with and do an accommodation and we will have to

27

1   go back to Judge Altonaga, I guess, to get that altered.

2           And I also want to make clear that Mr. Sayre's

3   obligation is to provide specific information.  So simply

4   having a note from a doctor that says he is in a coma, my

5   reading of the District Court cases say that is not sufficient.

6   It has to be detailed with specificity of exactly what is the

7   ailment.

8           Now if he is, in fact, in a coma, of course we can't

9   do anything about that.  But I am just anticipating, based on

10  the history that we have had with Mr. Sayre, as to the quality

11  of what we are going to receive.

12          And I would like the Court to reflect that in terms of

13  what you compel Mr. Sayre to do because, again, we have had

14  this issue in the past.

15          MR. SAYRE:  Judge, I'll wait for my turn to, I guess,

16  address the -- I'll call them the accusations just made.

17          THE COURT:  Just answer my question, though, Mr.

18  Gonzalez.  What relief do you want entered now?

19          MR. GONZALEZ:  I mean, well, right now we want --

20  well, based on the fact that right now you have before you no

21  actual evidence of incapacity --

22          THE COURT:  Right.

23          MR. GONZALEZ:  -- we would ask for an order compelling

24  his deposition before the 14th of February.

25          THE COURT:  Okay.

1      MR. GONZALEZ:  And then, Mr. Sayre will have to do

2  what he needs to do in order to come back and present what he

3  needs to have presented.

4      THE COURT:  Okay.  And then, Mr. Sayre, are you fine

5  with that?

6      MR. SAYRE:  Your Honor, that's fine.

7      I mean, and let me just speak to what Mr. Gonzalez

8  just said.  He is absolutely right that I did not disclose this

9  beforehand.  However, that was for good reason that I wasn't

10  allowed to.

11      Okay.  Now just because Mr. Gonzalez felt fit to

12  tarnish my name, I don't know what else he is referring to

13  about other hearings.  I mean, everything we have filed, we

14  filed in advance and we complied with Your Honor's ruling in

15  regards to filing things on Monday.

16      The other side, if we are going to throw stones and

17  not that I am here to do that, but they filed two additional

18  items; one last night that I did not receive until this morning

19  in violation of this Court's orders.  So I don't typically like

20  to, you know, do a tit-for-tat, but I really don't appreciate

21  my name being dragged through the mud as Mr. Gonzalez just did.

22      So, I will verify that that I did not tell them this

23  stuff in regards to Mr. Fischer's condition beforehand, but

24  that was for a reason.  And as to the other stuff, I just don't

25  appreciate it.

```
 1          THE COURT:  Well, I have seen a lot more mud.  Trust
 2   me.
 3          But going back to the point, is what the relief that
 4   Mr. Gonzalez is talking about, is that consistent with what you
 5   are asking me to do, basically, enter an order that compels his
 6   appearance by, say, February 14th?
 7          In which case, then, you either produce a viable Mr.
 8   Fischer, or either an affidavit, or a declaration from a doctor
 9   saying Mr. Fischer is incapacitated.
10          MR. SAYRE:  That's fine.
11          The only issue, as Mr. Gonzalez frames it, or at least
12   how I understood it in your order, Mr. Gonzalez would have you
13   write Mr. Fischer is compelled to appear on by next date.  The
14   order that I would contemplate is Mr. Fischer is ordered to
15   comply or to sit for a deposition by ex-date absent providing
16   an X, Y, Z, an affidavit from a doctor confirming Mr. Fischer's
17   condition.
18          So that is the only difference in, I guess, the way I
19   would have the order written.  So that I can then present that
20   order to -- not Mr. Fischer because Mr. Fischer is in a coma,
21   but the people that I am dealing with and say, listen, the
22   Judge said Mr. Fischer has to appear for a deposition, unless
23   you do this and he specifically said it in his order.
24          MR. OLDHAM:  Your Honor, this is Mike Oldham.
25          I have no interest in us showing up for a deposition
```

1  just to have an affidavit for a no-show.  I think it might be

2  helpful to -- and I also don't think an affidavit suffices.

3  Not even close.

4       But if he is ordered to appear for deposition before

5  February 14th, if they contend that he is physically unable to

6  attend, they shall present sufficient evidence to Defendants

7  and the Court by no later than February 8th.  That way we have

8  time to deal with it before the deposition.

9       That might help everyone resolve it rather than

10  spending the Defense counsel's time and the Defendants'  money

11  for a deposition that won't happen.

12       THE COURT:  Excuse me.

13       When you say an affidavit is not sufficient, what do

14  you want?  A picture of the guy in a hospital bed?  Is that the

15  idea?

16       MR. OLDHAM:  Well, we don't know what they would put

17  in the affidavit.

18       If a Judge just says Michael Fischer is physically

19  unable to attend a deposition, that is not sufficient under any

20  of the case law because it does not suggest a timeline.  It

21  does not give a diagnosis.  It gives no further information.

22       If there are medical records that could be probed

23  because, obviously, the next question will be to Judge

24  Altonaga, what next ?  Do we suspend everything until we can

25  have Michael Fischer's deposition?  Is he terminal?  Do they

1 believe he is terminal?

2      We know absolutely nothing other than what they have

3 just said that he's in a coma.  We don't know if he bumped his

4 head.  We don't know if he has COVID-19.  We don't know if he's

5 expected to recover shortly or if it's a terminal situation.

6 We know absolutely nothing.

7      And so, no, I would say that a vague affidavit under

8 the case law would not suffice.

9      THE COURT:  Okay.

10      MR. SAYRE:  Actually, under the case law, Your Honor,

11 with all due respect, in the case law that they are required to

12 file a protective order.

13      And with that, then, they would file their supporting

14 specific information, be it an affidavit or be it in whatever

15 form it takes, but that is sufficient with sufficient detail

16 for the Court, then, to decide the capacity or incapacity of

17 the witness.

18      That's what is required under the law.  And so I think

19 it is correct that Your Honor would enter an order saying you

20 are compelled to -- as of today there is nothing before the

21 Court to rule on to suggest any capacity.  So, as of today, the

22 order has to be an order to compel.

23      Now, I agree with Mr. Oldham that I think what is

24 prudent is that they be required if they are going to enter a

25 protective order with those details, then, that occur by the

1    8th.  So that way we do have time before Your Honor to deal

2    with this issue and still try to keep with the schedule that we

3    have in front of Judge Altonaga.

4              THE COURT:  Okay.  Well, I don't really think there is

5    much -- there's no doubt that a vague affidavit is not an

6    affidavit at all.

7              So I think it goes without saying that there has to be

8    sufficient verification, but a declaration from a doctor, I'm

9    perfectly prepared to accept so long as the declaration is

10   specific and it also states the diagnosis and the prognosis for

11   availability.  So I think that that makes the most sense.

12             I don't need to see medical records, unless you want

13   to use medical records in lieu of an affidavit from a doctor

14   and that is perfectly fine, too.  The reason, it is true you

15   need to have sufficient factual verification of unavailability

16   and the burden is on the Plaintiff.

17             So I have no problems with you doing that because the

18   burden is on the Plaintiff.  So the Plaintiff understands that.

19   So I will enter that order that requires basically you are

20   going to be moving to reconsider, Mr. Sayre.

21             Because if I am entering the order compelling, he

22   needs to be -- I am just going to say on February 14th.  And so

23   you need to timely move to reconsider if, in fact, you've got a

24   basis to do so.  And obviously, if the guy is in a coma, you

25   have a basis to do so.

1        MR. SAYRE:  Right.

2        THE COURT:  Does that make sense, Mr. Sayre?

3        MR. SAYRE:  Yes, it makes perfect sense.

4        My only issue is the timing.  I don't know when I'm

5   going to receive that documentation.

6        And I just want to make sure that that motion for

7   reconsideration gets before Your Honor, I presume by virtue of

8   a hearing, as quickly as possible.  And I do not mean to put

9   anybody in a jam by asking for a last minute emergency hearing

10  on the motion for reconsideration.

11       THE COURT:  No, you just have to do it on a timely

12  basis.  I am not going to require it by the 8th because if you

13  need to do it by the 10th, the 10th is fine with me.

14       So, whatever it is, I will give you leave to file

15  something and so that way you can put it on the record.  You

16  could file anything you want under seal.  You know, so long as

17  Defendants are comprised as to what that is, but you don't have

18  to file it in the public documents if you don't want.  You

19  could file it under seal.

20       So I would give you leave to do that, but as long as

21  you comply materially in advance of that date, right?  But,

22  obviously, it is already February -- what day is it today, the

23  5th?

24       MR. SAYRE:  The 4th.

25       THE COURT:  You've only got ten days.  So as soon as

1  you have it, file it.

2  　　　　MR. SAYRE:  Okay.  So it will be a motion for

3  reconsideration given the attached documentation under seal.

4  And then, we will send that to Defense counsel as well, but it

5  will be under seal on the record.

6  　　　　THE COURT:  Exactly.

7  　　　　MR. SAYRE:  Understood, Your Honor.  Thank you.

8  　　　　THE COURT:  It doesn't have to be done by the 8th

9  because the 8th is in four days and you may not have it in four

10  days, but as long as it is reasonably before the deposition.

11  So that way there would be no, you know, prejudice to the

12  Defendants if Mr. Fischer does not appear on the 14th.

13  　　　　So when would the Plaintiff's corporate rep be, then?

14  　　　　MR. SAYRE:  We have already scheduled him for -- well,

15  I don't know if he has been noticed, but we have agreed on the

16  morning of February 11th.

17  　　　　THE COURT:  Okay.

18  　　　　MR. SAYRE:  Because I have trial that afternoon on

19  February 11th.  So we are able to squeeze it in, then.

20  　　　　THE COURT:  Okay.  All right.

21  　　　　MR. SAYRE:  And I think we are good on the other -- I

22  think we agreed on the corporate representative as -- I'm sorry

23  the Defendants' deposition dates.  So from the Plaintiff's

24  perspective, I think those were the only issues.

25  　　　　THE COURT:  Anything else from the Defendants'

1  perspective?

2          MR. OLDHAM:  I don't believe so, Your Honor.

3          Dan, do you believe that we left anything uncovered?

4          MR. GONZALEZ:  No.  No, nothing else, Your Honor.

5  Thank you very much.

6          THE COURT:  Okay.  Good.

7          Thank you all for your appearances.  I will issue an

8  order.  You already provided me with a proposed order.  So I

9  will just play with the ones that I have here because I want to

10 make sure that I get that filed right away.

11         MR. GONZALEZ:  Thank you for the time, Your Honor.

12         THE COURT:  All right.  Thank you all very much.

13 Good-bye.

14              (Thereupon, the proceedings concluded.)

15

16

17

18

19

20

21

22

23

24

25

1

2                                      CERTIFICATE

3

4           I hereby certify that the foregoing transcript is an

5    accurate transcript of the audio recorded proceedings in the

6    above-entitled matter.

7

8

9

10
     02/08/21                          Bonnie Joy Lewis,
11                            Registered Professional Reporter
                                CASE LAW REPORTING, INC.
12                               7001 Southwest 13 Street,
                              Pembroke Pines, Florida 33023
13                                   954-985-8875

14

15

16

17

18

19

20

21

22

23

24

25